STEPHEN M. HAYES (SBN 83583)
**HAYES DAVIS BONINO ELLINGSON McLAY & SCOTT, LLP**
203 Redwood Shores Parkway, Suite 480
Redwood Shores, California 94065
Telephone: 650.637.9100
Facsimile: 650.637.8071


ROBERT S. McLAY (SBN 176661)
CHERIE M. SUTHERLAND (SBN 217992)
**HAYES DAVIS BONINO ELLINGSON McLAY & SCOTT, LLP**
770 L Street, Suite 950
Sacramento, California 95814
Telephone: 916.449.3958
Facsimile: 916.449.8256


Attorney for Defendants
RICHARD STORELEE and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (erroneously sued as STATE FARM INSURANCE, INC.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOE SAMIEIAN, an individual; and MOE'S HOME COLLECTION, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>RICHARD STORELEE, an individual; STATE FARM INSURANCE, INC., a foreign insurance company; and DOES 1 TO 10, inclusive,<br><br>Defendants. | CASE No. 3:08-CV-03918-BZ<br><br>[State Court Action: 08397801]<br><br>**STATE FARM'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS STORELEE, DISMISS CAUSE OF ACTION FOR TORTIOUS BAD FAITH, AND STRIKE PUNITIVE DAMAGES AND ATTORNEYS' FEES**<br><br>Date:      October 8, 2008<br>Time:     10:00 a.m.<br>Ctrm:     Courtroom G, 15th Floor<br>Judge:   Hon. Bernard Zimmerman |

Pursuant to the Federal Rules of Evidence, Rule 201, Defendants State Farm Mutual Automobile Insurance Company and Richard Storelee (hereinafter collectively referred to as "State Farm") request that this Court, in consideration of State Farm's Motion to Dismiss Defendant Richard Storelee, Dismiss Cause of Action for Tortious Bad Faith, and Strike Punitive Damages

and Attorneys' Fees made pursuant to the Federal Rules of Civil Procedure, Rules 12(b)(6) and 12(f), take judicial notice of the attached document:

    1.    Attached hereto as Exhibit "A" is a true and correct copy of the Complaint filed on July 11, 2008, in the Superior Court of the State of California, County of Alameda, Case No. 08397801 entitled *Moe Samieian, Moe's Home Collection, LLC v. Richard Storelee and State Farm Insurance, Inc., and Does 1 to 10.*

Dated:  August 14, 2008

    HAYES DAVIS BONINO ELLINGSON McLAY & SCOTT, LLP

By /S/ ROBERT S. McLAY
    STEPHEN M. HAYES
    ROBERT S. McLAY
    CHERIE M. SUTHERLAND
    Attorney for Defendant
    STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and RICHARD STORELEE

**Exhibit "A"**

HANSON BRIDGETT LLP
ALEXANDER J. BERLINE - 158098
aberline@hansonbridgett.com
CHRISTINE HILER - 245331
chiler@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

Attorneys for Plaintiffs
MOE SAMIEIAN, an individual; and
MOE'S HOME COLLECTION, LLC, a
California limited liability company

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

MOE SAMIEIAN, an individual; and
MOE'S HOME COLLECTION, LLC, a
California limited liability company,

Plaintiffs,

v.

RICHARD STORELEE, an individual;
STATE FARM INSURANCE, INC., a
foreign insurance company; and
DOES 1 TO 10, inclusive,

Defendants.

No. 08397801

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREPRESENTATION, PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF

Plaintiffs MOE SAMIEIAN (hereinafter, "SAMIEIAN"), and MOE'S HOME COLLECTION, LLC (hereinafter, "MOE'S LLC") (collectively, "Plaintiffs"), allege as follows:

### IDENTIFICATION OF PARTIES

1. At all times herein mentioned, Plaintiff MOE'S LLC, a California limited liability company headquartered in Richmond, CA, was the owner of a 2004 H2 Hummer automobile registered in California, license number 5HJM631 (hereinafter, the "HUMMER").

2. At all times herein mentioned, Plaintiff SAMIEIAN was, and is, the

- 1 -

1. president of MOE'S LLC who purchased and registered the HUMMER in Alameda county on behalf of MOE'S LLC. SAMIEIAN has a U.S. Green Card and maintains a residence in California.

3. At all times herein mentioned, Defendant Richard Storelee, was, and is, an insurance agent and/or broker licensed under the laws of the State of California (license number 0595470) and engaged in business as such in Fremont, California (hereinafter, "STORELEE").

4. At all times herein mentioned, Defendant State Farm Insurance, Inc. was, and is, an Illinois insurer authorized to transact, and transacting, business in the state of California as an insurance company (hereinafter, "STATE FARM").

5. At all times herein mentioned, STORELEE was the insurance broker for SAMIEIAN and MOE'S LLC and/or the duly authorized agent and employee of STATE FARM and in doing the things hereinafter mentioned was acting within the course and scope of his agency and employment.

6. Plaintiffs are ignorant of the true names and capacities whether individual, corporate, associate, or otherwise of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by those fictitious names. Plaintiffs are informed and believe, and on that basis allege, that these defendants are in some manner responsible for the acts, omissions and events herein referred to, and negligently or otherwise caused injuries and damages proximately thereby to Plaintiffs as alleged in this Complaint. Accordingly, Plaintiffs sue defendants DOES 1 through 10 under such fictitious names. Plaintiffs pray for leave to amend this Complaint to name properly and charge each such defendant when all necessary facts have been ascertained. (Hereinafter, STORELEE, STATE FARM, and DOES 1 through 10 are collectively referred to as "Defendants").

## JURISDICTION AND VENUE

7. Jurisdiction is proper in the Superior Court for County of Alameda pursuant to California Code of Civil Procedure §410.10 because this Court has general subject

- 2 -
COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF   1546061.2

1  matter jurisdiction and no statutory exceptions to jurisdiction exist.

2      8.    Venue is proper in the County of Alameda pursuant to California Code of Civil Procedure section 395.5, *inter alia*, because the contracts to procure insurance and other obligations of Plaintiffs and STORELEE and STATE FARM were to be performed in the County of Alameda. In addition, the subject insurance contract was paid for and delivered in Alameda County.

## GENERAL ALLEGATIONS

### I. THE INSURANCE POLICY

9.    On information and belief, STORELEE advertised that: "We offer the best insurance policies in a hurry! . . . we have been in business for over 25 years. My fully licensed staff and myself have 75 plus years of experience!!! . . . We specialize in customer service from the point of sale. We know what it takes to help you or your client." STORELEE services as an experienced and an auto insurance specialist were recommended to Plaintiffs.

10.   On information and belief, STATE FARM advertised that: "State Farm® has been in the business of providing excellent automobile coverage at an affordable price since 1922. Responding to our customers' needs keeps us the leader in auto insurance. . . . The company [State Farm] is principally engaged in writing automobile insurance." STATE FARM insurance was recommended to Plaintiffs by STORELEE, an agent for STATE FARM.

11.   On or about May 16, 2004, SAMIEIAN contacted STORELEE to place an order for an automobile liability policy covering the HUMMER. SAMIEIAN specifically requested the "most insurance" and highest liability bodily injury limits possible.

12.   STORELEE falsely represented that the highest liability bodily injury limits available were $250,000, per person.

13.   SAMIEIAN had no prior experience purchasing auto insurance in the United States. SAMIEIAN told STORELEE that he carried as much as $2,000,000 in automobile liability coverage in Canada, and asked STORELEE if he was sure that there

- 3 -
COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF   1546061.2

1  was not a policy with higher liability bodily injury limits than $250,000. STORELEE
2  assured SAMIEIAN that $250,000 was the maximum amount of coverage available, and
3  further represented to SAMIEIAN that the subject proposed policy was the "Cadillac of
4  insurance" - clearly representing (incorrectly) that the subject policy had the best and
5  highest possible coverages and that no other or greater liability insurance coverage was
6  required.

7      14.   In detrimental reliance on STORELEE's several false representation that
8  the maximum liability bodily injury coverage limit available was $250,000, Plaintiffs
9  authorized STORELEE to apply for and secure the subject auto policy.

10     15.   In May 2004, STATE FARM issued an automobile liability insurance policy
11 that covered Plaintiffs, in effect from May 14, 2004 through November 14, 2004 (Policy
12 Number 74 9567-E14-05A), which provided coverage of only $250,000, per person, for
13 bodily injury (hereinafter "the POLICY"). A true and correct copy of the POLICY
14 Declarations Page is attached hereto as Exhibit A.

15 II.   **PLAINTIFFS' INSURANCE BROKER AND/OR AGENT**

16     16.   At all times herein relevant, STORELEE was a licensed, or held himself out
17 as a licensed, insurance broker with the State of California, and/or STORELEE was an
18 appointed agent of STATE FARM through the California Department of Insurance,
19 and/or held himself out to be an agent of STATE FARM.

20     17.   At all times herein relevant, STORELEE acted as Plaintiffs' insurance
21 broker on the POLICY.

22     18.   On information and belief, STORELEE and STATE FARM held themselves
23 out as an insurance agent/broker, and an insurance company, with experience and
24 expertise in the insurance industry, and auto liability insurance in particular, including but
25 not limited to:

26     a.   "We are a Multi line insurance agency. We offer all lines of
27         insurance. We have been in business for over 25 years. My fully
28         licensed staff and myself have 75 plus years of experience!!!" (See

- 4 -

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL
NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF    1546061.2

    http://localism.com/agents/richardstorelee.)

  b. "We specialize in customer service from the point of sale. We know what it takes to help you or your client." (See http://localism.com/agents/richardstorelee.)

  c. "State Farm® has been in the business of providing excellent automobile coverage at an affordable price since 1922. Responding to our customers' needs keeps us the leader in auto insurance." (See http://www.statefarm.com/insurance/auto_insurance/auto_insurance.asp.)

  d. "The company [STATE FARM] is principally engaged in writing automobile insurance." (See http://www.statefarm.com/about/terms/terms.asp.)

19. On behalf of Plaintiffs, STORELEE applied for the POLICY.

20. Through all Defendants' conduct, alleged above, STORELEE created a duty for all the Defendants to correctly and competently advise Plaintiffs of the availability of policies with higher liability bodily injury limits, to apply for and place an auto policy with the maximum coverage limits available, as requested by Plaintiffs, and to correctly advise Plaintiffs of the adequacy of the POLICY.

### III. THE UNDERLYING CLAIM & TENDER

21. On or about June 16, 2004, SAMIEIAN was driving the HUMMER when he accidentally struck Murat Dikey (hereinafter, the "INCIDENT").

22. Mr. Dikey filed suit against Plaintiffs in British Columbia for damages caused by the INCIDENT (hereinafter the "DIKEY ACTION"). Plaintiffs timely tendered the DIKEY ACTION to STATE FARM. Plaintiffs were recently found liable for $1,000,650 (Canadian Dollars) in damages plus additional amounts to be determined.

23. On information and belief, STATE FARM has promised to pay $250,000 (US Dollars) of said judgment, leaving Plaintiffs responsible the balance of said

- 5 -

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF 1546061.2

judgment.

24. Defendants' conduct in breaching their contract, negligence in procuring a policy for less than the maximum amount of coverage available, and misrepresentations concerning available policy limits, has also forced Plaintiffs to incur un-reimbursed expenses in filing and prosecuting this action.

### FIRST CAUSE OF ACTION

**(Breach of Implied Contract To Procure Insurance, By Plaintiffs Against STORELEE, STATE FARM, and DOES 1-10)**

25. Plaintiffs incorporate by reference, as though fully set forth herein, the above paragraphs 1 through 24.

26. As Plaintiffs' insurance broker, and as a STATE FARM agent, STORELEE held himself out as an experienced licensed agent/broker with experience and expertise in the insurance industry. STORELEE was responsible for procuring Plaintiffs' insurance policy with the maximum amount of liability bodily injury coverage available. All Defendants breached their contracts to procure an appropriate insurance policy with the maximum amount of liability bodily injury coverage available.

27. Based on Defendants' course of conduct, Plaintiffs had reasonable expectations, which were fully and clearly understood by all Defendants, that they inform Plaintiffs of the maximum amount of liability bodily injury coverage available and would place an insurance policy with the maximum limit available. Plaintiffs' reasonable expectations, and Defendants' knowledge of these expectations, were made clear for many reasons, including, but not limited to, the following:

    a. Defendants' experience, expertise, and extensive knowledge in the insurance industry, and with STATE FARM's auto liability products in particular;

    b. Plaintiffs explicit request for the maximum amount of liability bodily injury coverage available; and

    c. Plaintiffs explicit questions concerning whether the $250,000 bodily

- 6 -

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF    1546081.2

injury limit STORELEE quoted as the maximum amount of liability bodily injury coverage available was correct.

28. All Defendants breached their implied contractual obligations by among other things failing to:

    a. advise Plaintiffs that STATE FARM and/or other insurers offered far more than $250,000 in liability bodily injury policy limits;

    b. advise Plaintiffs that STATE FARM offered, on information and belief, much higher coverage;

    c. advise Plaintiffs that STATE FARM offered other greater coverage when combined with an umbrella/excess policy; and

    d. advise Plaintiffs that the POLICY, with liability bodily injury limits of $250,000, did not in fact provide the maximum amount of coverage available.

29. As a direct and proximate result of all Defendants' breaches of this implied contract, Plaintiffs have been damaged as detailed above in paragraphs 22 through 24.

## SECOND CAUSE OF ACTION

(Negligent Misrepresentation, By Plaintiffs
Against STORELEE, STATE FARM, and DOES 1-10)

30. Plaintiffs incorporate by reference, as though fully set forth herein, the above paragraphs 1 through 29.

31. STORELEE misrepresented to Plaintiffs the amount of coverage available and the extent and type of coverage that could have procured on behalf of Plaintiffs, including but not limited to the following:

    a. that a $250,000 liability bodily injury policy limit was the maximum amount of coverage available; and

    b. that the POLICY STORELEE obtained provided the maximum liability bodily injury limits available to Plaintiffs and was therefore the "Cadillac of Insurance."

- 7 -

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF    1546061.2

32. These representations made by STORELEE were false. First, $250,000 is not the highest liability bodily injury policy limit offered by STATE FARM and/or other California auto insurers. At the time the POLICY was issued, STATE FARM and other insurers could have and would have offered and provided significantly greater liability bodily injury coverage both at the primary level and/or combined with an umbrella policy. Second, the POLICY with only a bodily injury limit of $250,000 was not the "Cadillac of insurance."

33. STORELEE was experienced at designing and applying for auto insurance, including, but not limited to, auto insurance liability policies through STATE FARM. Accordingly, STORELEE had no reasonable grounds for believing that $250,000 was the maximum amount of liability bodily injury coverage available or that the POLICY procured for Plaintiffs was the "Cadillac of insurance."

34. STORELEE intended that Plaintiffs rely on these representations. This intention is evidenced by many facts including, but not limited to, the following:

 a. STORELEE held himself out as having expertise in the insurance industry and experience obtaining auto insurance policies through STATE FARM;

 b. STORELEE knew that Plaintiffs' were from Canada and had no experience buying auto insurance in the United States;

 c. STORELEE knew that Plaintiffs' specifically requested an auto policy with the "maximum" amount of liability bodily injury coverage available;

 d. STORELEE was specifically told by Plaintiffs that that he carried as much as $2,000,000 in automobile liability coverage in Canada.

35. Plaintiffs justifiably relied on the representations made by STORELEE regarding the amount of coverage available when Plaintiffs authorized him to procure the POLICY.

36. Relying on STORELEE's representations was a substantial factor in

- 8 -
COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF    1546061.2

1 causing PLAINTIFFS' damages because had STORELEE not made these
2 misrepresentations, Plaintiffs' would have obtained a policy with the maximum coverage
3 available which would have eliminated Plaintiffs' exposure to the DIKEY ACTION and
4 the resulting litigation expenses as detailed above in paragraphs 22 and 24.

37. Relying on these representations has damaged PLAINTIFFS as detailed above in paragraphs 22 through 24.

### THIRD CAUSE OF ACTION

**(Professional Negligence, By Plaintiffs Against STORELEE, STATE FARM, and DOES 1-10)**

38. Plaintiffs incorporate by reference, as though fully set forth herein, the above paragraphs 1 through 37.

39. All Defendants owed Plaintiffs a duty of care in procuring the POLICY and insuring that the POLICY provided the insurance requested (i.e., the maximum amount of liability bodily injury coverage available), and to advise Plaintiffs of the adequacy of their insurance; to correctly advise Plaintiffs as to the maximum amount of liability bodily injury coverage available; and to advise Plaintiffs as to the true nature of quality of the POLICY.

40. All Defendants represented to Plaintiffs that they were experienced at designing and obtaining insurance policies. Plaintiffs relied on these representations by allowing all Defendants to design an auto liability policy for Plaintiffs providing the maximum amount of liability bodily injury coverage available.

41. All Defendants represented to Plaintiffs that an auto insurance policy with $250,000 in liability bodily injury coverage was the maximum liability bodily injury coverage available in response to Plaintiffs' (1) explicit request for a policy with the maximum amount of coverage available; and (2) explicit question regarding whether STORELEE was sure that $250,000 was the maximum amount of liability bodily injury coverage available. Plaintiffs relied on these representations by authorizing STORELEE to obtain and secure the POLICY with $250,000 in liability bodily injury policy limits.

- 9 -

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF    1546061.2

42. All Defendants breached their duty to exercise reasonable skill, care and diligence by among other things failing to:

    a. advise Plaintiffs that STATE FARM offered more than $250,000 in liability bodily injury policy limits;

    b. advise Plaintiffs that STATE FARM offered, on information and belief, over a million dollars in auto liability bodily coverage either alone at the primary level or in combination with an umbrella policy;

    c. advise Plaintiffs that other auto insurance companies offered policies with liability bodily injury limits greater than $250,000;

    d. procure a policy with the maximum limits available; and

    e. advise Plaintiffs that the POLICY, with liability bodily injury limits of $250,000, did not provide the maximum amount of coverage available.

43. Had Defendants not breached their duty to exercise reasonable skill, care and diligence, Plaintiffs would have obtained a policy for the maximum amount of coverage available.

44. All Defendants' negligent procurement of the POLICY has damaged Plaintiffs as detailed above in paragraphs 22 through 24.

### FOURTH CAUSE OF ACTION

**(Tortious Bad Faith Denial of Duty to Indemnify By Plaintiffs Against STATE FARM, and DOES 1-10)**

45. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 44, as though fully set forth herein.

46. The POLICY contains an implied covenant of good faith and fair dealing under which STATE FARM agreed not to take any action that would deprive Plaintiffs of their rights and benefits under the POLICY.

47. STATE FARM unreasonably, and in tortuous breach of the covenant of good faith and fair dealing, refused to cover Plaintiffs for the full judgment rendered

- 10 -

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF     1546061.2

1. against them in the DIKEY ACTION.

2. 48. As a proximate result of STATE FARM's refusal to cover the DIKEY ACTION up to the maximum amount of coverage offered by STATE FARM, Plaintiffs were compelled to incur attorneys' fees and other costs and expenses in the litigation defense of the DIKEY ACTION and the litigation of this Complaint. As a further proximate result of STATE FARM's wrongful denial, Plaintiffs have been forced to incur related expenses all according to proof, including but not limited to the difference between the $1,000,650 (Canadian Dollars) and the $250,000 (US Dollars) that STATE FARM has promised to pay.

49. The acts of STATE FARM alleged above were done intentionally, maliciously, oppressively, and with the intent of defrauding Plaintiffs, who may therefore recover exemplary or punitive damages.

### FIFTH CAUSE OF ACTION

(Reformation, By Plaintiffs Against STATE FARM, and DOES 1-10)

50. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 49, as though fully set forth herein.

51. By and through STORELEE, STATE FARM issued the POLICY to Plaintiffs to carry out their intended agreement—to provide Plaintiffs with an auto liability insurance coverage for the maximum amount of liability bodily injury coverage available.

52. Plaintiffs believed and relied on STORELEE's mistaken representations that the maximum amount of liability bodily injury coverage available was $250,000.

53. The POLICY was therefore bound with $250,000 in coverage which, on information and belief, is far below the maximum coverage available under a primary auto policy and/or a primary auto policy in combination with an umbrella liability policy.

54. The failure of the POLICY to reflect the true intent of the parties resulted from either fraud or a mutual mistake of fact in that both parties believed and understood that said policy would provide Plaintiffs with the maximum amount of liability bodily injury coverage available.

- 11 -

COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL
NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF           1546061.2

55. The incorrect policy limit—by either fraud or mistake—has and continues to materially affect the rights of Plaintiffs in seeking coverage for the DIKEY ACTION.

56. As such, Plaintiffs seek reformation of the POLICY to reflect the true intent of the parties, which was to provide Plaintiffs with the maximum amount of liability bodily injury coverage available for an auto liability policy.

### SIXTH CAUSE OF ACTION
(Declaratory Relief - Duty to Indemnity By Plaintiffs Against STATE FARM, and DOES 1-10)

57. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 56, as though fully set forth herein.

58. Pursuant to Code of Civil Procedure Section 1060, Plaintiffs assert this cause of action for declaratory relief against STATE FARM.

59. An actual controversy has arisen and now exists between Plaintiffs and STATE FARM concerning their respective rights, obligations and duties under the POLICY. Plaintiffs contend that under the POLICY, they are entitled to complete indemnity from STATE FARM equal to the maximum amount of liability bodily injury coverage offered by STATE FARM for an auto liability policy rather than the $250,000 in coverage mistakenly listed on the POLICY. STATE FARM contends that its indemnity duties under the POLICY are limited to $250,000.

60. Declaratory relief is necessary to determine whether Plaintiffs are entitled to coverage in the DIKEY ACTION upon to an amount equal to the maximum amount of liability bodily injury coverage offered by STATE FARM for an auto liability policy.

///
///
///
///
///
///
///

- 12 -
COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF        1548061.2

## PRAYER

WHEREFORE, Plaintiffs pray as follows:

1. General and compensatory damages in an amount to be proven at trial with interest thereon as provided by law;

2. For damages according to proof for breach of implied contract, including extra-contractual damages in an amount to be determined at trial;

3. Declaration that Defendant STATE FARM is obligated under the POLICY to cover Plaintiffs in the DIKEY ACTION up to an amount equal to the maximum amount of auto liability bodily injury coverage offered by STATE FARM;

4. For an order reforming the POLICY to provide the maximum amount of auto liability bodily injury coverage offered by STATE FARM;

5. For attorneys' fees and costs incurred in obtaining the POLICY benefits, as provided by law (i.e., *Brandt v. Sup. Ct. (Standard Ins. Co.)* (1985) 37 Cal.3d 813) (as against Defendant STATE FARM only);

6. For attorneys' fees and costs as provided by tort of another and by law (as against Defendant STORELEE only);

7. For prejudgment interest in an amount to be determined at trial;

8. For costs of suit and interest herein;

9. For punitive damages against Defendants in an amount sufficient to deter and make an example of Defendants; and

10. For such other and further relief as the Court deems just and proper.

DATED: July 11, 2008                    HANSON BRIDGETT LLP


By: _____
ALEXANDER J. BERLINE
CHRISTINE HILER
Attorneys for Plaintiffs
MOE SAMIEIAN, an individual; and
MOE'S HOME COLLECTION, LLC, a
California limited liability company

- 13 -
COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREP., PROFESSIONAL
NEGLIGENCE, TORTIOUS BAD FAITH, REFORMATION & DECLARATORY RELIEF        1546061.2

07/24/2008 15:56 FAX 408 558 2956    PROP & CAS CLAIM    ☒001

# EXHIBIT A

1111557.1

07/24/2008 15:56 FAX 408 558 2958   PROP & CAS CLAIM   ☒002



State Farm Mutual Automobile Insurance Company
6400 State Farm Drive
Rohnert Park CA 94926

NAMED INSURED       05-2548-112V

SAMIEIAN, MOE
1099 ESSEX AVE
RICHMOND CA  94801-2112

MUTL VOL
DECLARATIONS PAGE
JUL 28 2005

POLICY NUMBER   74 9667-E14-05
POLICY PERIOD MAY 14 2004 to NOV 14 2004

AGENT
RICHARD STORELEE
43195 MISSION BLVD SUITE A1
FREMONT, CA 94539-5339

PHONE: (510)490-2566

DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.
SEPARATE STATEMENT ENCLOSED IF AMOUNT DUE.

| 2004 | HUMMER | H2 | SPORT WG | 5GRGN23U04H107499 | 1A3HA311 |

See policy for coverage details.                                           2004 HUMMER

Limits of Liability-Coverage A-Bodily Injury
  $250,000    $500,000
  Each Accident
D500   $500 Deductible Comprehensive                                       $136.56
H      Emergency Road Service                                              $4.32
       Limits of Liability-U
  $250,000    $500,000

Your policy consists of this declarations page, the policy booklet - form 9805A, and any endorsements that apply, including those issued to you with any subsequent renewal notice.

9805A.1  AMENDMENT OF DEFINED WORDS  LIABILITY, MEDICAL PAYMENTS
         UNINSURED MOTOR VEHICLE AND PHYSICAL DAMAGE COVERAGES AND
         CONDITIONS
RESIDENCE-359 CASTLE GLEN RD, WALNUT CREEK CA  94595.

Agent:    RICHARD STORELEE       5
Telephone: (510)490-2566
Prepared  MAY 20 2004    2548-161

00465/00214

Important...

California law requires us to provide you with information for filing complaints with the State Insurance Department regarding the coverage and service provided under this policy.

Complaints should be filed only after you and State Farm or your agent or other company representative have failed to reach a satisfactory agreement on a problem.

Please forward such complaints to:   California Department of Insurance
                                     Consumer Services Division
                                     300 South Spring Street
                                     Los Angeles, CA 90013

                                     Or call toll free
                                     1-800-927-HELP (4357)

## NOTICE

We are required to furnish you with the following information:

1. An automobile liability insurance company may cancel a policy before the end of the current policy period if an insured fails to pay the premium when due or if an insured, a resident spouse, a relative who lives with the insured or any other person who usually drives the car has had his or her driver's license under suspension or revocation during the 180 days just before the renewal date of the policy, if renewed, or during the policy period.

2. An automobile liability insurance company may increase the premium or refuse to renew the policy for any of the following reasons:

   a. Accident involvement by an insured, and whether an insured is at fault in the accident.

   b. A change in, or an addition of, an insured vehicle.

   c. A change in, or addition of, an insured under the policy.

   d. A change in the location of garaging of an insured vehicle.

   e. A change in the use of the insured vehicle.

   f. Convictions for violating any provision of the Vehicle Code or the Penal Code relating to the operation of a motor vehicle.

   g. The payment made by an insurer due to a claim filed by an insured or a third party.

An automobile liability insurance company may increase the premium or refuse to renew the policy for reasons that are not listed above but which are lawful and not unfairly discriminatory.

6

PLEASE ATTA... TO YOUR POLICY BOOKLET
Policy Number: 74 9567-B14-05
Sheet 1 of 1
JUL 2 8 2005

**6905A.1 AMENDMENT OF DEFINED WORDS, LIABILITY, MEDICAL PAYMENTS, UNINSURED MOTOR VEHICLE AND PHYSICAL DAMAGE COVERAGES AND CONDITIONS**

This endorsement is a part of your policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as your policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that your policy is changed as follows:

1. **DEFINED WORDS**

   The following definition is added:

   **Fungi** — means any type or form of fungus or fungi and includes:
   a. mold;
   b. mildew; and
   c. any of the following that are produced or released by fungi:
      a. mycotoxins;
      b. spores;
      c. scents; or
      d. byproducts.

2. **SECTION I — LIABILITY — COVERAGE A**

   Under the paragraph that reads "In addition to the limits of liability, we will pay for an insured against a civil lawsuit", the following coverage is provided by this policy:

   a. Item 3.c. is deleted.
   b. Item 4. is changed to read:

      4. The following costs and expenses if related to and incurred after a civil lawsuit has been commenced against an insured for damages for which liability coverage is provided by this policy:

         (1) loss of wages or salary, but not other income, up to $100 for each day an insured attends at our request:
            (1) an arbitration;
            (2) a mediation; or
            (3) a trial of a civil suit.

         a. reasonable expenses incurred by an insured at our request, other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an insured must be reported to us before we will pay.

3. **SECTION II — MEDICAL PAYMENTS — COVERAGE C**

   The following is added to Coverage C:

   a. THERE IS NO COVERAGE FOR BODILY INJURY THAT RESULTS FROM EXPOSURE TO FUNGI.

   b. THERE IS NO COVERAGE FOR BODILY INJURY THAT RESULTS FROM:
      (1) NUCLEAR REACTION;
      (2) RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
      (3) THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

4. **SECTION III — UNINSURED MOTOR VEHICLE — COVERAGE U AND UNINSURED MOTOR VEHICLE PROPERTY DAMAGE — COVERAGE U1**

   The following changes are made to UNINSURED MOTOR VEHICLE — COVERAGE U:

   a. The following is added to Uninsured Motor Vehicle under coverage U — means:

      4. a land motor vehicle owned by or leased to an injured insured when that vehicle is being operated, or caused to be operated, by a person without the insured's consent, in connection with criminal activity that has been documented in a police report and the injured insured is not a party to such activity.

   b. Item 2. under "An uninsured motor vehicle under coverage U does not include a land motor vehicle" is changed to read:

      2. owned or operated by you, your spouse, any relative or any resident of your household (except

   c. When Coverage U Does Not Apply:
      (1) The following is added to Item 2.b.:

         This does not apply to bodily injury to an insured through being struck by a motor vehicle owned by or leased to that insured when that vehicle is being operated, or caused to be operated, by a person without that insured's consent, in connection with criminal activity that has been documented in a police report and the injured insured is not a party to such activity.

      (2) Item 3. is changed to read:
         THERE IS NO COVERAGE:
         3. TO THE EXTENT IT BENEFITS:
            a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;
            b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION, DISABILITY BENEFITS OR SIMILAR LAW;
            c. ANY GOVERNMENTAL BODY OR AGENCY.

5. **SECTION IV — PHYSICAL DAMAGE COVERAGES**

   The following is added to When The Physical Damage Coverages Do Not Apply:

   a. THERE IS NO COVERAGE FOR LOSS TO ANY VEHICLE DUE TO FUNGI WHETHER OR NOT THE FUNGI RESULT FROM A LOSS THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. WE WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF FUNGI OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY VEHICLE THAT ARE DUE TO THE EXISTENCE OF FUNGI.

   b. THERE IS NO COVERAGE FOR LOSS TO ANY VEHICLE THAT RESULTS FROM:
      (1) NUCLEAR REACTION;
      (2) RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
      (3) THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

6. **CONDITIONS**

   Item 4. of Condition 2, Suit Against Us, is changed to read:

   There is no right of action against us:
   a. under uninsured motor vehicle coverage unless suit for bodily injury has been filed in the proper court against the uninsured motorist:
      (1) suit for bodily injury has been filed in the proper court against the uninsured motorist;
      (2) an agreement as to the amount due under this coverage has been made; or
      (3) the insured or his or her representative has formally signed arbitration proceedings, sent to us by certified mail, return receipt requested.

   If suit has been filed against the uninsured motorist, written notice of the suit must be given to us within a reasonable time after the insured knew or should have known that the amount was uninsured, but no way not require that this notice be given, earlier than two years from the date of the accident or the cause of action on which the claim is based.

   This provision does not limit a right of action resulting from bodily injury caused by an underinsured motor vehicle.

Page 1 of 2    6905A.1
Page 2 of 2    6905A.1